# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAITFLO, L.L.C., and CALABASH, L.L.C., for themselves and all others similarly situated, | ) <br> ) <br> ) <br> ) <br> ) |
| **Plaintiffs,** | ) <br> ) Civil Action No. <br> ) |
| **vs.** | ) **JURY TRIAL DEMANDED** <br> ) |
| SPRINT COMMUNICATIONS COMPANY, L.P., and WILTEL COMMUNICATIONS, LLC, | ) <br> ) <br> ) <br> ) |
| **Defendants.** | ) <br> ) |

## STATEWIDE CLASS ACTION COMPLAINT

Plaintiffs Caitflo, L.L.C. and Calabash, L.L.C. ("Plaintiffs") and all others similarly situated, for their cause of action against Sprint Communications Company, L.P., and WilTel Communications, LLC (collectively "Defendants"), state as follows:

### Jurisdiction

1.     This Court has jurisdiction over the causes of action in this case under 28 U.S.C. § 1332. There is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and costs, exceeds Seventy-five Thousand Dollars ($75,000.00).

### Summary of the Case

2.     Defendants are companies engaged in Connecticut and throughout the United States in the installation, maintenance, and commercial use of fiber-optic cable telecommunications systems. In constructing those telecommunications systems, Defendants

buried their fiber-optic cable and installed related telecommunications equipment ("Telecommunications Cable Systems") within railroad rights of way all across Connecticut ("Rights of Way"). In their efforts to install the Telecommunications Cable Systems as quickly and inexpensively as possible, Defendants chose to ignore the property rights of Plaintiffs and other members of the Class defined herein. Plaintiffs and other members of the Class in fact owned the land underlying or adjacent to the railroad Rights of Way at issue, and Defendants did not seek Plaintiffs' or other Class members' permission or pay them any compensation for the installation, maintenance, and use of their Telecommunications Cable Systems.

3.      Rather, without notifying Plaintiffs and Class members, Defendants entered into agreements with several railroads in Connecticut and across the country, including, but not limited to Union Pacific Railroad Company, BNSF Railway Company, Consolidated Rail Corporation, CSX Transportation, Inc., and Norfolk Southern Railway Company (collectively "the Railroads"). Under those agreements, Defendants paid the Railroads for the purported right to install their Telecommunications Cable Systems within the Rights of Way at issue.

4.      But those Rights of Way are limited in scope to *railroad purposes*. They may not be used for any purpose other than operating a railroad. Burying fiber-optic cable, installing related equipment, and maintaining and using those components as part of a commercial-telecommunications business, are outside this limited scope. The Railroads therefore could not lawfully transfer, assign, or apportion to Defendants the use of the Rights of Way for commercial-telecommunications purposes, and Defendants should have negotiated with and paid Plaintiffs and members of the Class—not the Railroads—for the right to install their Telecommunications Cable Systems within the Rights of Way.

5.      By failing to do so, and by the installation, maintenance, and use of the Telecommunications Cable Systems within the Rights of Way, Defendants have committed

2

present, permanent, and continuing trespasses on the land of Plaintiffs and members of the Class. Those trespasses were induced and facilitated by the Railroads' complete disregard of the limited real-property interests they held in the subject properties.

6.     Defendants' trespasses are for commercial, non-railroad purposes, and have resulted and will result in the generation of substantial revenue for Defendants and the Railroads. Defendants have been unjustly enriched to the extent that they have received and retained profits and rents as a result of their unlawful use and occupation of the land of Plaintiffs and members of the Class.

**The Parties**

7.     Plaintiff Caitflo, L.L.C., is a Connecticut Limited Liability Company with its principal place of business in Connecticut, and owns land in New Haven County, Connecticut. Defendants have installed and are operating fiber-optic or other telecommunications cable upon Plaintiff's property without permission.

8.     Plaintiff Calabash, L.L.C., is a Connecticut Limited Liability Company with its principal place of business in Maryland, and owns land in Hartford County, Connecticut. Defendants have installed and are operating fiber-optic or other telecommunications cable upon Plaintiff's property without permission.

9.     Defendant Sprint Communications Company, L.P. ("Sprint") is a Delaware limited partnership, with its principal place of business in Kansas. Sprint's partners are, upon information and belief, US Telecom, Inc., a Kansas corporation with its principal place of business in Kansas, UCOM, Inc., a Missouri corporation with its principal place of business in Kansas, UTELCOM, Inc., a Kansas corporation with its principal place of business in Kansas, and Sprint International Communications Company, a Delaware corporation with its principal place of business in Virginia. Sprint, by itself or through its divisions, subsidiaries, affiliates,

3

joint-venture partners, agents or otherwise, owns and operates telecommunications equipment – including fiber-optic and other telecommunications cable – and provides telecommunications and related services in Connecticut and throughout the United States.   Sprint is legally responsible for the acts of its subsidiaries, affiliates, joint-venture partners, agents, and predecessors in interest that are described in this Complaint, including specifically Sprint Communications Company, L.P., US Telecom, Inc., UCOM, Inc., UTELCOM, Inc., and Sprint International Communications Corporation.

10.     Defendant WilTel Communications, LLC, ("WilTel") is a Delaware limited liability company, with its principal place of business in Colorado. WilTel, by itself or through its divisions, subsidiaries, affiliates, joint-venture partners, agents or otherwise, owns and operates telecommunications equipment—including fiber-optic and other telecommunications cable—and provides telecommunications and related services in Connecticut and throughout the United States.  WilTel is legally responsible for the acts of its subsidiaries, affiliates, joint venture partners, agents, and predecessors in interest, including Level 3 Communications, Inc., Level 3 Telecom Holdings, Inc., WilTel Communications, Inc., WilTel Communications, LLC, and Williams Communications, LLC, f/k/a Williams Communications, Inc., f/k/a Vyvx, Inc.

## Class Action Requirements

11.     This action is brought by Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under the provisions of Fed. R. Civ. P. 23.

12.     Plaintiffs represent a Class ("the Class") consisting of all persons or entities who own or owned, or held any interest in, real property underlying or adjacent to the cable side of a railroad right of way on which Sprint and/or WilTel has entered to install or maintain a fiber-optic or other telecommunications cable.  Excluded from the Class are Defendants, all state and federal governments and their agencies, any Indian tribe, and the trial judge.

13.    This action seeks recovery only for economic losses suffered by Plaintiffs and members of the Class and expressly is not intended to request any recovery for personal injury.

14.    The Class is so numerous that the individual joinder of all members is impracticable.  Although an exact number is unknown, Plaintiffs believe there are at least hundreds, and likely several thousands, of Class members geographically dispersed throughout Connecticut.

15.    There are questions of law and fact common to all members of each proposed Class, and these common questions predominate over any questions affecting individual Class members.

16.    Plaintiffs' claims are typical of the claims of the proposed Class.  Plaintiffs have been injured by the same common course of wrongful conduct by Defendants that has damaged the other members of the Class.

17.    Plaintiffs will fairly, fully, and adequately protect the interests of the members of the Class, and have retained competent counsel experienced in prosecuting complex class-action litigation.  Plaintiffs have no interests that conflict with, or are adverse to, other members of the Class.

18.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class that could establish incompatible standards of conduct for Defendants, or which could, as a practical matter, be dispositive of the interests of non-parties.

19.    Questions of law and fact are common to all members of the Class and predominate over any questions affecting only individual members, such that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual members of the Class may be relatively small,

the burden and expense of individual prosecution of this complex and extensive litigation makes it impractical for individual Class members to seek redress for the wrongful conduct alleged here. Absent a class action, Defendants likely would retain the benefits of their wrongdoing. In addition, individual litigation would increase the delay and expense to all parties and to the court system. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

20.     Plaintiffs anticipate no unusual difficulties in the management of this litigation as a class action.

### Facts Applicable to All Counts

21.     Over the last several decades, as fiber-optic cable technology improved, voice and data capacity needs increased, and use of the Internet exploded, telecommunications companies (including Defendants) sought to construct new, nationwide fiber-optic cable networks to carry long-distance voice and data transmissions. The telecommunications company first completing a nationwide network using the new and improved fiber-optic technology would enjoy significant competitive and economic advantages over its competitors.

22.     Defendants therefore sought to complete their nationwide fiber-optic networks as quickly as possible, but faced the daunting task of laying cable across thousands of miles of land.

23.     To achieve both lower costs and extra speed in installing their Telecommunications Cable Systems, Defendants deliberately bypassed Plaintiffs and members of the Class on whose property Defendants wanted to, and did, install their Telecommunications Cable Systems. Instead, Defendants entered into agreements with the Railroads that purported to grant Defendants the right to install, maintain, and use their Telecommunications Cable Systems

within the railroad Rights of Way that cross over or are adjacent to Plaintiffs' and Class members' land.

24.    Under those agreements, Defendants were to pay, have paid, and continue to pay substantial sums of money and other compensation to the Railroads.  Upon information and belief, Defendants have paid millions of dollars to the Railroads in exchange for purported licenses or easement agreements allowing Defendants to use the railroad Rights of Way on or adjacent to property owned by Plaintiffs and members of the Class.

25.    The railroad Rights of Way within which Defendants installed, or had installed for themselves, their Telecommunications Cable Systems, are limited in scope to purposes necessary to the operation of a railroad.  Defendants' use of the railroad Rights of Way for commercial-telecommunications purposes is outside that limited scope.  For this reason, the Railroads that purported to license Defendants' installation, maintenance, and use of the railroad Rights of Way for commercial-telecommunications purposes had no legal right to do so without the consent of, and without providing compensation to, the owners of the land underlying or adjacent to the Rights of Way.

26.    Defendants did not inform Plaintiffs or other Class members of their intent to enter upon their land or to install, maintain, and use Telecommunications Cable Systems within the Rights of Way.  Nor did Plaintiffs and the Class members give Defendants or the Railroads permission to enter upon their land, exceed the scope of the Rights of Way, or install, maintain, or use Telecommunications Cable Systems within the Rights of Way.

27.    Defendants knew or had reason to know that they had no right to enter, or allow others to enter, Plaintiffs' and other Class members' land, or to install, maintain, and use Telecommunications Cable Systems.

7

## COUNT I

### (To Recover Damages for Trespass)

28.     Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs of this Complaint as fully set forth herein.

29.     By Defendants' entry upon the Rights of Way, and by their installation, maintenance, and use of Telecommunications Cable Systems within the Rights of Way, all without permission or right given by Plaintiffs and members of the Class, Defendants have committed a continuing and permanent trespass on Plaintiffs' and Class members' land.

30.     At all times, Defendants knew, or had reason to know, that the Railroads did not have the authority to grant Defendants the legal right to install, maintain, or use Telecommunications Cable Systems on Plaintiffs' and Class members' land.   Nonetheless, through concerted action, each Defendant entered into agreements with the Railroads providing for Defendants' installation, maintenance, and use of Telecommunications Cable Systems on land belonging to Plaintiffs and members of the Class, and further providing for Defendants to pay the Railroads monies over a period of years for the purported right to install, maintain, and use Telecommunications Cable Systems on land belonging to Plaintiffs and members of the Class.

31.     As a direct and proximate result of their trespass upon the land of Plaintiffs and members of the Class, Defendants have realized substantial revenue and profits from the commercial occupation and use of said land, but have failed to pay any part of said revenue and profits to Plaintiffs and Class members.

32.     As a proximate result of the trespass of Defendants on their land, Plaintiffs and members of the Class have been damaged by the diminution in the value of their land, including diminished rental value, and by the deprivation of their right to determine possession and use of

their land. Plaintiffs and the Class members are therefore entitled to an award of compensatory damages from Defendants in an amount to be proved at trial.

## COUNT II

### (To Recover Profits From Unjust Enrichment)

33.     Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs of this Complaint as fully set forth herein.

34.     As a result of Defendants' unlawful use and occupation of their land—all through the assistance and ineffectual authorization of the Railroads—Plaintiffs and other Class members have been deprived of the rents, profits, and other benefits properly arising from their ownership and control of the land. Defendants' unlawful commercial use and occupation of the land—by installing, maintaining, and using Telecommunications Cable Systems—has resulted in Defendants' receipt and retention of millions of dollars in the form of rents, profits, and other benefits properly payable to Plaintiffs and other members of the Class.

35.     Defendants have been unjustly enriched by their receipt and retention of millions of dollars in rents, profits, and other benefits properly payable to Plaintiffs and other Class members and, under the circumstances and in good conscience, Defendants ought not be allowed to retain those rents, profits, and benefits.

36.     Plaintiffs and Class members are entitled to a judgment requiring Defendants to disgorge and pay to them all sums they have received that are properly due and owing to Plaintiffs and Class members as rents, profits, and other benefits incidental to ownership of their land, as restitution for the unjust enrichment of Defendants.

## COUNT III

### (To Recover Damages For Slander of Title)

37.     Plaintiffs hereby incorporate by reference and realleges the allegations contained in the foregoing paragraphs of this Complaint as fully set forth herein.

38.     In the license agreements between Defendants and the Railroads, in Defendants' agreements with the Railroads regarding use of the Rights of Way or Telecommunications Cable Systems, in publicly-filed or published documents, and in their acts of placing signs and posts marking the location of the fiber-optic cable, Defendants have made false and unfounded statements indicating or suggesting that they possess a right of occupancy or use of property owned by Plaintiffs and other members of the Class.

39.     Defendants' statements concerning their alleged interest in the real property of Plaintiffs and other members of the Class were made with knowledge or reckless disregard of their falsity.

40.     As a result of Defendants' slander of the title or interest of Plaintiffs and other Class members in the Rights of Way, Plaintiffs and members of the Class have sustained damages in the form of loss of use of their property, loss in marketable value of their property, and expenses necessary to obtain a judicial declaration that the titles of Plaintiffs and other Class members are free and clear of any interest or right of use, possession or occupancy by Defendants.

## COUNT IV

### (Injunctive Relief)

41.     Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs of this Complaint as fully set forth herein.

42.    Plaintiffs and members of the Class are owners of real property or interests in real property in Connecticut affected by Defendants' actions and thus have standing to seek declaratory and/or injunctive relief.

43.    The railroad Rights of Way within which Defendants have installed, or had others install, their Telecommunications Cable Systems, are limited to the surface of the land and may be used only for railroad purposes. The right to license or consent to all non-railroad uses on the land encumbered by the railroad Rights of Way belongs to Plaintiffs and members of the Class. Thus, the commercial-telecommunications use of the Rights of Way by Defendants is unlawful.

44.    Plaintiffs pray that this Court enter a judgment declaring that: Defendants have no right to install, maintain, or use their Telecommunications Cable Systems with the railroad Rights of Way; Defendants have no legal right to possess the property beneath the railroad Rights of Way; Defendants may not lawfully continue to maintain and use their Telecommunications Cable Systems within the railroad Rights of Way; Defendants be enjoined from using the railroad Rights of Way; Defendants be ordered to remove their Telecommunications Cable Systems from the railroad Rights of Way; and the Railroads have no legal right to allow non-railroad use of the Rights of Way.

### Prayer for Relief

WHEREFORE, Plaintiffs pray for the following relief:

1.    That this Court certify the Class described herein, and name Plaintiffs as the representatives of the Class and Plaintiffs' counsel as counsel for the Class.

2.    That this Court enter a judgment against Defendants in an amount sufficient to compensate Plaintiffs and other Class members for the direct and consequential damages caused by Defendants' trespass, and for attorneys' fees, costs, and expenses, and for all other relief deemed just and proper by the Court.

11

3.      That this Court enter a judgment against Defendants in an amount equal to the amount by which Defendants have been unjustly enriched as a result of their unlawful entry upon, use, occupation, and collections of rents and profits from Plaintiffs and Class members, and for attorneys' fees, costs, and expenses, and for all other relief deemed just and proper by the Court.

4.      That this Court enter a judgment against Defendants in an amount sufficient to compensate Plaintiffs and other Class members for the direct and consequential damages caused by Defendants' slander of title, including the costs and expenses necessary to obtain a judicial declaration that the titles of Plaintiffs and other Class members are free and clear of any interest or right of use, possession or occupancy by Defendants, and for attorneys' fees, costs, and expenses, and for all other relief deemed just and proper by the Court.

5.      That this Court enter a judgment against Defendants declaring that:  Defendants have no right to bury, maintain, or use their Telecommunications Cable Systems within the railroad Rights of Way; Defendants have no legal right to possess the property beneath the railroad Rights of Way; Defendants may not lawfully continue to maintain and use their Telecommunications Cable Systems within the railroad Rights of Way; Defendants be enjoined from using the railroad Rights of Way; Defendants be ordered to remove the Telecommunications Cable Systems from the railroad Rights of Way; and the Railroads have no legal right to allow non-railroad use of the Rights of Way; for attorneys' fees, costs, and expenses; and for all other relief deemed just and proper by the Court.

6.      That the Court enter an award of punitive or exemplary damages against

Defendants in an amount to be determined by a jury.

Dated this 30th day of March, 2011.

Stephen M. Rogers (Federal Bar No. ct26577)
**ZELLE HOFMANN VOELBEL & MASON, LLP**
950 Winter Street
Suite 1300
Waltham, MA  02451
Telephone:  (781) 466-0708
Facsimile:  (781) 466-0701
E-Mail: srogers@zelle.com

-and-

Dan Millea
Jennifer Geelan
**ZELLE HOFMANN VOELBEL & MASON, LLP**
500 Washington Avenue South, Suite 4000
Minneapolis, MN  55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100
E-Mail: dmillea@zelle.com
E-Mail: jgeelan@zelle.com

Of Counsel:

Nels Ackerson
Kathleen C. Kauffman
**ACKERSON KAUFFMAN FEX, P.C.**
1701 K Street, N.W.
Suite 1050
Washington, D.C.  20006
Telephone: (202) 833-8833
Facsimile: (202) 833-8831
E-Mail: nels@ackersonlaw.com
E-Mail: kauffman@ackersonlaw.com

Henry J. Price
**PRICE WAICUKAUSKI & RILEY, LLC**
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-8787
Facsimile: (317) 633-8797
E-Mail: hprice@price-law.com

Andrew W. Cohen
**KOONZ, McKENNEY, JOHNSON,**
**DePAOLIS & LIGHTFOOT, L.L.P.**
2001 Pennsylvania Ave., N.W.
Washington, D.C.  20006
Telephone: (202) 659-5500
Facsimile: (202) 785-3719
E-Mail: acohen@koonz.com

**ATTORNEYS FOR PLAINTIFF**